UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GIOVANNI F. CANALES,

                    Plaintiff,

v.                                    Case No. 3:12-cv-392-J-34MCR

DR. MARK ABRAMSON, M.D.,
et al.,

                    Defendants.
_____

### ORDER

### I. Status

Plaintiff Giovanni F. Canales, an inmate of the Florida penal system who is proceeding in forma pauperis, initiated this action on April 9, 2012, by filing a pro se Civil Rights Complaint (Doc. 1) pursuant to 42 U.S.C. § 1983. He filed a First Amended Complaint (Doc. 25) on July 30, 2013, and a Second Amended Complaint (Amended Complaint) (Doc. 30) with exhibits (P. Ex.) on November 8, 2013. In the Amended Complaint, he names the following individuals as the Defendants: (1) Dr. Mark Abramson, M.D., a urologist at North Florida's Reception and Medical Center (RMC); (2) Dr. M. Gonzalez, M.D., a physician at Columbia Correctional Institution (CCI); and (3) Sarah Burke, a nurse at CCI. Canales asserts that the Defendants violated his federal constitutional rights when they

were deliberately indifferent to his serious medical needs relating to pain and malfunctioning of his penis. As relief, he requests compensatory and punitive damages as well as declaratory relief.

This cause is before the Court on Defendant Abramson's Amended Motion to Dismiss Plaintiff's Second Amended Complaint (Abramson's Motion to Dismiss) (Doc. 36) and Defendant Burke's Motion to Dismiss Plaintiff's Second Amended Complaint (Burke's Motion to Dismiss) (Doc. 54). The Court advised Canales that the granting of a motion to dismiss would represent an adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond. See Order (Doc. 17) at 4-5, paragraph 11; Order (Doc. 48). Canales has responded. See Plaintiff's Motion to Show Cause and Reply in Opposition to Defendant Abramson's Amended Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 50); Plaintiff's Reply in Opposition to Defendant Mark Abramson, M.D.'s Memorandum of Law in Opposition to Plaintiff's Reply in Opposition to Amended Motion Dismiss Plaintiff's Second Amended Complaint (Doc. 53); Plaintiff's Response to Defendant Burke's Motion to Dismiss Plaintiff's Second Amended Complaint, Alternatively Plaintiff's Conditional Proposal to Voluntarily Dismiss Defendant Burke from the Complaint (Response) (Doc. 55). The Motions to Dismiss are ripe for judicial review.

## II. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

## III. Canales' Assertions in the Amended Complaint (Doc. 30)

In August of 2008, while housed at CCI, Canales injured his penis while masturbating. Amended Complaint at 5. After hearing a "pop," Canales immediately experienced pain, bleeding, and swelling on the left side of his penis and severe pain in both testicles. Id. Canales asserts that he visited the medical clinic at CCI twenty to thirty times. Id. After "repeated visits" to the medical department, Defendant Burke "became hostile and verbally abusive," and threatened to have Canales placed in confinement if he continued to complain about the same medical problems relating to

3

his penis, testicles, and inability to maintain an erection. Id. at 6A. According to Canales, Burke "interfered" so that he was not able to see doctors on a timely basis. Id.

In mid-December of 2008, Defendant Gonzalez, a physician at CCI, documented Canales' complaints and referred him for a urology consultation at RMC. See P. Ex. H at 2, Consultation Request and Consultant's Report, dated December 12, 2008. In the December 12th report, Gonzalez found that Canales had a "moderate left varicocele" and noted it "may represent" thrombosis. Id. Dr. Hiep Nguyen, as the Chief Health Officer and Senior Physician at CCI, approved the request for a consultation at RMC on December 15, 2008, and the consultation was scheduled for January 12, 2009. Id.

On January 12, 2009, Defendant Abramson, a urologist at RMC, evaluated Canales' symptoms and concluded that he had a sprained muscle at the base of his penis. See P. Ex. C at 2, Consultation Request and Consultant's Report. As a result of the examination, Dr. Abramson recommended anti-inflammatory medication. Id. According to a staff physician, the CCI medical department ordered the medication. Id. On January 13, 2009, Defendant Gonzalez noted that Dr. Abramson had consulted with Canales on January 12th. P. Ex H at 3, Consultation Request and Consultant's Report. Dr. Gonzalez diagnosed Canales with "varicocele, hydrocele" and stated that the medical department should rule out "thrombosed varicocele." Id. Dr. Nguyen approved the request on January 16, 2009. Id.

In early March 2009, Defendant Abramson consulted with Canales again about his penile pain and erectile dysfunction and wrote prescriptions for pain medication. Amended Complaint at 6C; P. Ex. A at 9. In mid-March, Canales complained to the CCI Warden about his medical issues and stated that he had been to sick call "numerous times," and "the only medical treatment" he received was pain pills and antibiotics. P. Ex. A at 8, Request for Administrative Remedy or Appeal, dated March 15, 2009. As relief, he requested an MRI and a referral to a urologist. Id. In denying Canales' grievance, the Warden stated: "According to your medical record, you were seen by an [sic] urologist on 3/02/09, on 3/25/09 the doctor wrote a prescription for pain medication. You are already scheduled for a visit with the doctor to further discuss your medical issues." Id. at 9, Response, dated April 2, 2009.

When Canales complained again about penile pain with erectile dysfunction, Dr. L. Hoang, M.D., a staff physician at the CCI medical department, on June 8, 2009, requested that the RMC urology clinic "re-evaluate and advise." P. Ex. C at 2, Consultation Request and Consultant's Report. Dr. Nguyen approved the request for consultation on July 15, 2009. Id. On August 31, 2009, Defendant Abramson re-evaluated Canales; after an ultrasound, he diagnosed Canales with Peyronie's disease and recommended vitamin E and another consultation in six months. Id. at 3, Consultant's

Report; P. Ex. A at 10, Request for Administrative Remedy or Appeal.

On March 25, 2010, Dr. C. Barosy, M.D., a CCI physician, evaluated Canales for his "chronic" condition of testicular pain, discomfort and swelling and referred him to the RMC urology clinic for re-evaluation. See P. Ex. E at 3, Consultation Request and Consultant's Report. In the report, Dr. Barosy documented Canales' medical history of varicocele and hydrocele (detected by ultrasound in 2008) as well as "severe testicular trauma" that same year. Id. As diagnostic findings, Dr. Barosy noted testicular swelling and epididymitis. Id. As a result of Barosy's referral, Defendant Abramson again re-evaluated Canales on April 12, 2010, and diagnosed him with a "left varicocele." Complaint at 6B; P. Ex. C at 4, Consultation Request and Consultant's Report. Defendant Abramson referred Canales to Dr. George Miguel, M.D., another urologist at RMC, for a second opinion. Id. at 6B.  According to Canales, when Miquel ordered an MRI, Defendant Abramson, as the Chief Urologist, denied the MRI request.  Id.

In April 2010, Canales submitted a grievance to the Warden about his ongoing medical issues and the alleged inadequate testing at RMC, stating in pertinent part:

> In September of 2008[,] I was injured while working construction for this prison. The injuries I sustained were to my testicles and penis area. My medical jacket should reveal I've been to sick call more than 20 times. I have been in constant pain, at times

6

> debilitating. Here [at CCI], the doctor sent
> me to RMC for an MRI and testing to reveal the
> extent of my injuries. However, Dr. Abramson,
> a Urologist, refused to allow an MRI, and
> instead performed an ultrasound - resulting in
> an erroneous diagnosis of Peyronies disease
> which is documented in my medical file.
> According to Dr. Espino, after examining my
> penis, his diagnosis was that I do not have
> Peyronie's disease, informing me to file a
> complaint against Dr. Abramson for his
> misdiagnosis. Apparently, Dr. Espino,
> considering the blunt trauma I suffered to my
> testicles and penis area, found a lump on one
> of my testicles, suggesting that a vein or
> blood vessel is protruding (like a crack in my
> testicle which cause[d] a blood vessel to push
> out). Further, a ligament or muscle connecting
> my penis to my pelvic region seems torn. I
> need an MRI. I have suffered enough. . . .

P. Ex. A at 10, Request for Administrative Remedy or Appeal

(capitalization and quotations omitted), dated April 18, 2010. In

denying this grievance, Dr. Gonzalo Espino, M.D., the Chief Health

Officer, responded:

> Your request for administrative remedy or
> appeal has been reviewed and evaluated.
>
> You had a urology consult and were seen on 4-
> 29-10[.] You were also sent for a second
> opinion[.] All together you have been sent to
> RMC urology clinic 6 times[1] for the same
> issue as well as by our own physician. Only a
> physician can order an MRI[.] An ultrasound
> was performed and based on the doctor[']s
> opinion, an MRI was not indicated[.] Thus[,]

---

[1] Canales asserts that Dr. Abramson consulted with him at the
RMC urology clinic a total of seven times: five times in 2009
(January 12, March 3, April 12, July 15, and August 31), and again
on April 29, 2010, and September 15, 2011. Amended Complaint at 6C,
paragraph 18.

> your grievance is denied. Continue to follow
> all appointments.

Id. at 11, Response, dated May 24, 2010.

Canales also complained to the FDOC Secretary that he needed an MRI to determine an appropriate treatment plan. P. Ex. G at 2, Request for Administrative Remedy or Appeal, dated June 1, 2010. In denying Canales' grievance, a representative of the FDOC Bureau of Inmate Grievance Appeals stated in pertinent part:

> Your request for administrative remedy was
> received at this office and it was carefully
> evaluated. Records available to this office
> were also reviewed.
>
> In addition, the institution was contacted and
> they provided this office with information
> regarding the issues you presented.
>
> It is determined that the response made to you
> by Dr. Espino on 5/24/10 appropriately
> addresses the issues you presented.
>
> It is the responsibility of your Chief Health
> Officer to determine the appropriate treatment
> regimen for the condition you are experiencing
> including specialty consults.
>
> Should you experience problems, sick call is
> available so that you may present your
> concerns to your health care staff.

Id. at 3, Response, dated August 3, 2010.

Canales acknowledges that he has been to the RMC urology clinic seven times, that Defendant Abramson has seen him each time, and that Defendant Gonzalez has examined him and evaluated his condition "numerous times" at the CCI medical clinic. Amended Complaint at 6C. On August 2, 2010, Canales explained to Gonzalez

8

that an x-ray or MRI "would probably reveal the problem . . . ."
Id. According to Canales, Gonzalez told him "to get out of his
office and that [Canales] could not tell him how to do his job."
Id.

On March 22, 2011, Canales submitted an inmate request,
stating that "a variety of medical doctors" at CCI and two
urologists (Dr. George Miguel, M.D. and Defendant Abramson) have
seen him to evaluate and treat the injury he "received to [his]
penis while working on the construction site . . . ." P. Ex. B at
2, Inmate Request, dated March 22, 2011. While acknowledging "the
many diagnosis [sic] and test ordered," Canales complained that his
injury still persisted due to "the misdiagnosis given" by Drs.
Espino and Abramson. Id. In response, the Department wrote:

> On 1/31/11 during sick call, you informed
> [the] nursing staff that you had not been
> honest with medical staff for the past 2 yrs.
> regarding the initial injury to your penis.
> You reported the initial injury occurred
> during masturbation. You were educated on the
> importance of honesty with medical staff as
> dishonesty may cause a delay in obtaining an
> accurate diagnosis. You were seen by the
> institutional MD on 2/10/11 and a urology
> consult was ordered and submitted to
> Utilization Management at RMC for approval.
> The consult was denied by the Physician
> Advisor. You are scheduled for an appointment
> 3/24/11 with the institutional physician and
> you may discuss possible treatment options
> with him at that time.

Id., Response (capitalization omitted), dated March 24, 2011.
According to Canales' exhibit, even when he informed the nursing

staff, on January 31, 2011, that he had injured his penis during masturbation (not while working on a construction site as he previously told them), an institutional medical doctor examined him the next day, on February 1, 2011, and again on March 24, 2011.

On April 15, 2011, in another grievance to the Warden at CCI, Canales asserted that he had been to sick call twenty times for the same complaints relating to penile and testicular pain and erectile dysfunction and had seen at least four medical doctors,[2] including two urologists, who gave multiple incorrect diagnoses. See P. Ex. A at 2, Request for Administrative Remedy or Appeal, dated April 15, 2011. On April 26, 2011, Dr. Paiboon Isra, M.D., the Chief Health Officer, responded in pertinent part:

> Your request for administrative remedy or appeal has been reviewed and evaluated.
>
> Review of your medical record indicates you were not honest about how the original injury happened. This in return led to a misdiagnosis. You have been seen by both of the urologist[s] [(Drs. Mark Abramson and George Miguel)] at RMC with no recommended treatment for your condition. The medical staff here went above and beyond in trying to get your injury diagnosed. Had you been honest about your injury, treatment may have been available.

Id. at 5, Response, dated April 26, 2011; see also P. Ex. F at 3, Response, dated June 24, 2011 ("The Department of Corrections does

_____

[2] In his grievance, Canales named the doctors who were allegedly involved with his medical care: Drs. Barosy, Espino, H. Nguyen Cho, L. Hoang, and Abramson. See P. Ex. A at 3.

not treat reproductive or impotence disorder."); P. Ex. G at 7, Response, dated August 26, 2011 ("It is the responsibility of your Chief Health Officer to determine the appropriate treatment regimen for the condition you are experiencing.").

On August 25, 2011, the CCI medical department referred Canales for another urology consultation at RMC, which was scheduled for September 15, 2011. P. Ex. H at 4, Consultation Request and Consultant's Report. Chief Health Officer D. Gaxiola, M.D. approved the request for consultation. Id. Dr. George Miguel, a urologist at RMC who had previously examined Canales in early 2010, noted that Canales had fractured his penis three years ago, and there were neither lesions nor masses. Id. Dr. Miguel concluded: "no therapy indicated now." Id.

## IV. Law and Conclusions

In the Motion to Dismiss, Defendant Abramson argues that the Court should dismiss the Amended Complaint with prejudice because: (1) it fails to state a claim against Defendant Abramson for alleged violations of 42 U.S.C. § 1983, and (2) Canales failed to comply with the Court's Order to Amend (Doc. 28) when he filed the Amended Complaint (Doc. 30) eight days after the Court's October 30th deadline. See Motion to Dismiss (Doc. 36). Defendant Burke asserts that the Court should dismiss her as a Defendant in the action, or alternatively, direct Canales to file a more definite statement of his claims because: (1) Canales failed to exhaust

11

available administrative remedies regarding any of his claims against Defendant Burke, especially those related to his assertions that she threatened to have him placed in confinement if he pursued medical care and conspired with Defendants Gonzalez and Abramson to deny him medical care; (2) Canales fails to state a claim upon which relief may be granted regarding his conclusory allegations of conspiracy; (3) Canales may not recover damages against Burke in her official capacity; (4) Canales' claims for violations of the Florida Constitution, Florida Statutes, and the Florida Administrative Code fail to state a claim upon which relief may be granted; and (5) his remaining claims against Burke are too vague to provide her with sufficient notice to file a proper answer. See Burke's Motion to Dismiss (Doc. 54).

The Court will address the Defendants' preliminary challenges before addressing the substantive merits of Canales' claims. First, with respect to Defendant Abramson, to the extent he seeks dismissal of this action based on Canales' alleged failure to comply with the Court's Order to amend, the Court finds that Canales timely filed the Amended Complaint (Doc. 30) on October 30, 2013, pursuant to the mailbox rule. As to Burke's exhaustion challenge, Canales concedes that his claims that Defendant Burke threatened to have him placed in confinement if he pursued medical care and conspired with Defendants Gonzalez and Abramson to deny him medical care "may not have been properly exhausted through the

three-step grievance procedure . . . ." Plaintiff's Response (Doc. 55) at 5. As such, Canales seeks to amend his complaint "to remove those unexhausted claims." Id. Therefore, Plaintiff's request will be granted to the extent that those claims against Defendant Burke will be dismissed. See Burke's Motion to Dismiss at 5-10.

Next, the Court turns to Burke's challenge to Plaintiff's claims against her in her official capacity. Burke asserts that the suit against her in her official capacity for damages should be dismissed. Upon review, this Court agrees. In Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (per curium), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. Quern v. Jordan, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. See Gamble, 779 F.2d at 1513-20.

Accordingly, in Zatler, the court found that the Secretary of the Florida Department of Corrections was immune from suit in his official capacity. Id. Thus, insofar as Plaintiff seeks monetary damages from Defendants in their official capacities, the Eleventh Amendment bars suit.

Turning to the merits of this action, Canales complains that Defendants Gonzalez and Abramson misdiagnosed his ailments relating

to penile and testicular pain and erectile dysfunction without the benefit of an x-ray or MRI. Additionally, he asserts that Defendants Abramson and Burke refused to timely refer him to Dr. Miguel. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, the Eleventh Circuit "'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). More than conclusory and vague allegations are required to state a cause of action under 42 U.S.C. § 1983. See L.S.T., Inc., v. Crow, 49 F.3d 679, 684 (11th Cir. 1995) (per curiam); Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984). In the absence of a federal constitutional deprivation or violation of a federal right, Canales cannot sustain a cause of action against the Defendants under 42 U.S.C. § 1983.

To the extent that Canales asserts that Defendants Abramson and Burke violated his Eighth Amendment right to be free from cruel

and unusual punishment,[3] the Eleventh Circuit has explained the requirements for an Eighth Amendment violation.

> "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." Farmer, 511 U.S. at 832, 114 S.Ct. at 1976 (internal quotation and citation omitted).[4] Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane conditions of confinement. Id. However, as noted above, only those conditions which objectively amount to an "extreme deprivation" violating contemporary standards of decency are subject to Eighth Amendment scrutiny. Hudson, 503 U.S. at 8-9, 112 S.Ct. at 1000.[5] Furthermore, it is only a prison official's subjective deliberate indifference to the substantial risk of serious harm caused by such conditions that gives rise to an Eighth Amendment violation. Farmer, 511 U.S. at 828, 114 S.Ct. at 1974 (quotation and citation omitted); Wilson, 501 U.S. at 303, 111 S.Ct. at 2327.[6]

Thomas v. Bryant, 614 F.3d 1288, 1306-07 (11th Cir. 2010).

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d

---

[3] Canales states that "any citing of the Florida Constitution, Florida Statutes or Florida Administrative Code should be construed as a[n] Eight[h] Amendment violation claim." Response (Doc. 55) at 7.

[4] Farmer v. Brennan, 511 U.S. 825 (1994).

[5] Hudson v. McMillian, 503 U.S. 1 (1992).

[6] Wilson v. Seiter, 501 U.S. 294 (1991).

1235, 1243 (11th Cir. 2003)). The plaintiff must satisfy the objective component by showing that he had a serious medical need. <u>Goebert v. Lee County</u>, 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" <u>Id</u>. (citing <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." <u>Id</u>. (citation and internal quotations marks omitted).

<u>Brown</u>, 387 F.3d at 1351. Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." <u>Richardson</u>, 598 F.3d at 737 (11th Cir. 2010) (setting forth the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing <u>Farrow v. West</u>, 320 F.3d at 1245)).

> In <u>Estelle</u>[7], the Supreme Court established that "deliberate indifference" entails more than mere negligence. <u>Estelle</u>, 429 U.S. at 106, 97 S.Ct. 285; <u>Farmer</u>, 511 U.S. at 835, 114 S.Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in <u>Farmer</u> by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an

---

[7] <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976).

> excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). In interpreting <u>Farmer</u> and <u>Estelle</u>, this Court explained in <u>McElligott</u>[8] that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>,[9] 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

<u>Farrow</u>, 320 F.3d at 1245-46.

Here, Canales asserts that Defendant Abramson misdiagnosed his ailments. A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks and citation omitted). Canales has not alleged facts sufficient to state a claim under the Eighth Amendment in that he has not shown that Defendant Abramson was deliberately indifferent to his serious medical needs. While Plaintiff's allegations may suggest medical malpractice, "[a]ccidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the

---

[8] <u>McElligott v. Foley</u>, 182 F.3d 1248 (11th Cir. 1999).

[9] <u>Taylor v. Adams</u>, 221 F.3d 1254 (11th Cir. 2000).

victim is a prisoner.'" <u>Harris v. Coweta County</u>, 21 F.3d 388, 393 (11th Cir. 1994) (citing <u>Estelle</u>, 429 U.S. at 106). A violation of the Eighth Amendment requires a showing of "deliberate indifference" to an inmate's health or safety. <u>Farmer</u>, 511 U.S. at 834. "Deliberate indifference is not the same thing as negligence or carelessness." <u>Ray v. Foltz</u>, 370 F.3d 1079, 1083 (11th Cir. 2004) (citation omitted). The Eleventh Circuit has stated:

> For medical treatment to rise to the level of a constitutional violation, the care must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted). A medical need may be considered serious if a delay in treating it makes it worse. <u>Danley v. Allen</u>, 540 F.3d 1298, 1310 (11th Cir. 2008). To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." <u>Taylor v. Adams</u>, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and internal quotations omitted).

<u>Palazon v. Sec'y for the Dep't of Corr.</u>, 361 F. App'x 88, 89 (11th Cir. 2010) (per curiam).

Here, Canales' allegations center upon negligence and alleged malpractice. He also asserts that Defendant Abramson misdiagnosed his condition without the benefit of an MRI or x-rays, but instead relied upon an ultrasound. The United States Supreme Court has stated:

> [T]he question whether an X-ray or additional
> diagnostic techniques or forms of treatment is
> indicated is a classic example of a matter for
> medical judgment. A medical decision not to
> order an X-ray, or like measures, does not
> represent cruel and unusual punishment. At
> most[,] it is medical malpractice, and as such
> the proper forum is the state court . . . .

Estelle, 429 U.S. at 107; Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether [defendants] should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.").

Here, the record reflects that Defendant Abramson was attentive to Canales' medical needs, even after medical personnel became aware that Canales was less than forthright regarding how he had injured his penis. See P. Ex. A at 5, Response, dated April 26, 2011 ("The medical staff here went above and beyond in trying to get your injury diagnosed."). As previously stated, Canales acknowledges that Dr. Abramson consulted with him at the RMC urology clinic seven times (January 12, March 3, April 12, July 15, and August 31, 2009, April 29, 2010, and September 15, 2011). Amended Complaint at 6C, paragraph 18. Canales opines that proper medical treatment would have included an MRI and x-rays. However, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the [inmate's] diagnosis or course of treatment" does not support a claim of cruel and unusual

punishment. <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991). Moreover, as acknowledged by Canales, four medical doctors, including two urologists, repeatedly examined him on multiple occasions; an ultrasound was performed, and the Chief Health Officer did not recommend additional diagnostic tests. As the CCI medical department explained to Canales, it is the Chief Health Officer's responsibility to decide the appropriate treatment regimen for an inmate's ailments; if Canales experienced additional medical issues, he was instructed to continue to access sick call to present his concerns to the health care staff. <u>See</u> P. Ex. G at 7, Response, dated August 26, 2011.

With respect to Canales' assertions concerning Defendant Burke, Canales has failed to provide facts showing that she was deliberately indifferent to his serious medical needs. Instead, Plaintiff's exhibits show that he had ongoing access to medical care including a variety of physicians (Drs. Gonzalez, Barosy, Espino, P. Isra, L. Hoang, and Gaxiola) as well as two RMC urologists (Dr. George Miguel, M.D., and Defendant Dr. Mark Abramson, M.D.), and that several Chief Health Officers reviewed his medical file over the years to confirm that he was able to access appropriate and timely medical care.

Indeed, the record reflects that the Defendants provided adequate medical care to Canales based on the information that he provided to them at that time. Moreover, Defendant Abramson, as the

Chief Urologist at RMC, was responsible for determining the appropriate treatment regimen for Canales' medical issues relating to penile and testicular pain and erectile dysfunction. While Canales may disagree with the treatment provided to him by the Defendants and desire additional diagnostic testing, he nevertheless fails to state a federal constitutional claim of deliberate indifference. See Estelle, 429 U.S. at 107.

Additionally, to the extent that Canales asserts that Defendant Abramson conspired with Burke and Gonzalez, he has failed to allege sufficient facts to sustain a conspiracy action.

> "[T]o sustain a conspiracy action under §
> 1983 . . . a plaintiff must show an underlying
> actual denial of [his] constitutional rights."
> GJR Invs., Inc. v. County of Escambia, Fla.,
> 132 F.3d 1359, 1370 (11th Cir. 1998) (citing
> Slavin v. Curry, 574 F.2d 1256, 1262 (5th Cir.
> 1978), modified on other grounds on denial of
> reh'g, 583 F.2d 779 (5th Cir. 1978). In
> addition, the plaintiff must prove that the
> defendants reached an understanding to deny
> the plaintiff's rights. See Bendiburg v.
> Dempsey, 909 F.2d 463, 469 (11th Cir. 1990).

Hadley v. Gutierrez, 526 F.3d 1324, 1332 (11th Cir. 2008) (footnote omitted). Upon review of the Complaint and attached exhibits, the Court is convinced that Plaintiff's allegations center upon a difference of medical opinion as to how to treat his testicular and penile pain and erectile dysfunction. Because Plaintiff has neither alleged facts supporting a claim that the Defendants acted with deliberate indifference to his serious medical needs nor that they reached an understanding to deny his federal constitutional

rights," see Myers v. Bowman, 713 F.3d 1319, 1332 (11th Cir. 2013), Defendants Abramson and Burke's Motions to Dismiss will be granted, and the action will be dismissed with respect to claims asserted against them.

## V. Sua Sponte Frivolity Review

The Court will conduct an independent frivolity review of Plaintiff's claims involving Defendant Miguel Gonzalez.[10] The Prison Litigation Reform Act requires the Court to dismiss this case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). In making this determination, the Court must read Plaintiff's pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519 (1972).

A claim is frivolous if it is without arguable merit either in law or fact." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir.) (citing Battle v. Central State Hospital, 898 F.2d 126, 129 (11th Cir. 1990)), cert. denied, 534 U.S. 1044 (2001). A complaint filed in forma pauperis which fails to state a claim under Fed.R.Civ.P.

---

[10] When service of process was returned unexecuted as to Defendant Miguel Gonzalez, the Court, on April 30, 2014, redirected service of process upon him at the confidential address that the FDOC provided to the Court in camera. On May 30, 2014, service of process was returned unexecuted, noting that Dr. Gonzalez had moved with no forwarding address. Thus, Defendant Gonzalez has neither been served nor has he responded to Canales' assertions.

12(b)(6) is not automatically frivolous. Neitzke v. Williams, 490 U.S. 319, 328 (1989). Section 1915(e)(2)(B)(i) dismissals should only be ordered when the legal theories are "indisputably meritless," id. at 327, or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). "Frivolous claims include claims 'describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'" Bilal, 251 F.3d at 1349 (quoting Neitzke, 490 U.S. at 328). Additionally, a claim may be dismissed as frivolous when it appears that a plaintiff has little or no chance of success. Bilal v. Driver, 251 F.3d at 1349.

Canales complains that Defendant Gonzalez misdiagnosed his ailments relating to penile and testicular pain and erectile dysfunction without the benefit of x-rays or an MRI. Given the record, including Canales' exhibits, and for the reasons stated with respect to claims involving Defendant Abramson, the Court is convinced that Plaintiff's assertions as to Defendant Gonzalez center upon a difference of medical opinion as to how to treat his testicular and penile pain and erectile dysfunction.

Additionally, to the extent that Canales asserts that Gonzalez verbally abused him for repeatedly complaining about the same medical issues, such allegations do not state a claim of federal constitutional dimension. See Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) (per curiam) (citing Edwards v.

<u>Gilbert</u>, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989)) ("Hernandez's allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats[,] and verbal abuse alone is insufficient to state a constitutional claim."), <u>cert</u>. <u>denied</u>, 129 S.Ct. 1402 (2009).

> "[M]ere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations." <u>Coyle v. Hughes</u>, 436 F.Supp. 591, 593 (W.D. Okl[a]. 1977). "Were a prisoner . . . entitled to a jury trial each time that he was threatened with violence by a prison guard, even though no injury resulted, the federal courts would be more burdened than ever with trials of prisoner suits . . . ." <u>Bolden v. Mandel</u>, 385 F.Supp. 761, 764 (D. Md. 1974). <u>See Johnson v. Glick</u>, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973) (the use of words, no matter how violent, does not comprise a section 1983 violation).

<u>McFadden v. Lucas</u>, 713 F.2d 143, 146 (5th Cir. 1983).

Because Plaintiff has neither alleged facts supporting a claim that Defendant Gonzalez acted with deliberate indifference to Plaintiff's serious medical needs nor that Gonzalez reached an understanding with Defendants Abramson and Burke to deny Plaintiff's federal constitutional rights, the case will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), as frivolous, with respect to Plaintiff's his claims against Gonzalez.

Therefore, for the foregoing reasons, it is now

**ORDERED AND ADJUDGED:**

1.   Plaintiff's request to "remove" unexhausted claims, <u>see</u> Response (Doc. 55) at 5, is **GRANTED** to the extent that his claims that Defendant Burke threatened to have him placed in confinement if he pursued medical care and conspired with Defendants Gonzalez and Abramson to deny him medical care are **DISMISSED** for his failure to exhaust administrative remedies.

2.   Defendants Abramson and Burke's Motions to Dismiss (Docs. 36, 54) are **GRANTED**.

3.   Plaintiff's claims as to Defendant Gonzalez are **DISMISSED** as frivolous.

4.   The Clerk of Court shall enter judgment dismissing this case and terminating any pending motions.

5.   The Clerk shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of August, 2014.

MARCIA MORALES HOWARD
United States District Judge

sc 8/11
c:
Giovanni F. Canales
Counsel of Record

25